T.C. Memo. 2015-120

UNITED STATES TAX COURT

RICHARD C. WAGNER, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 16001-11.                    Filed June 30, 2015.

<u>Held</u>:  P had unreported income from his wholly owned S corporation.

<u>Held</u>, <u>further</u>, he had unreported rental income.

<u>Held</u>, <u>further</u>, he is entitled to a deduction for only one personal exemption.

<u>Held</u>, <u>further</u>, he is not entitled to head of household filing status.

<u>Held</u>, <u>further</u>, he is entitled to no child tax credit.

<u>Held</u>, <u>further</u>, he is entitled to no earned income credit.

<u>Held</u>, <u>further</u>, he is entitled to no net operating loss deduction.

<u>Held</u>, <u>further</u>, he is liable for the accuracy-related penalty.

[*2]   Richard C. Wagner, pro se.

Vivian Bodey, Catherine G. Chang, and James C. Hughes, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION


HALPERN, Judge:  By notice of deficiency (notice), respondent determined a deficiency in, and an accuracy-related penalty with respect to, petitioner's 2007 Federal income tax of $77,085 and $15,417, respectively.[1]

Petitioner had filed a 2007 Form 1040, U.S. Individual Income Tax Return (2007 Form 1040).  Respondent examined the return and made the following adjustments, resulting in the deficiency in tax:  (1) He included in petitioner's income $320,222 of passthrough income from Wagner Corp., petitioner's wholly owned S corporation; (2) he included rental income of $8,340; (3) he reduced reported income by $45,645 and disallowed expenses of $30,791 to reflect his disregard of two Schedules C, Profit or Loss From Business; (4) he disallowed deductions for two personal exemptions; (5) he disallowed the additional child tax credit, and (6) he disallowed the earned income credit.  Petitioner claimed "head of

---

[1]Unless otherwise stated, all section references are to the Internal Revenue Code in effect for 2007, and all Rule references are to the Tax Court Rules of Practice and Procedure.  All dollar amounts have been rounded to the nearest dollar.

**[*3]** household" filing status on the return and, by the notice, respondent made no adjustment to that claim, although the parties apparently believe that he did, having been deemed to stipulate, among other things, that the notice "disallowed Head of Household filing status". Petitioner's filing status is raised as an issue both in respondent's pretrial memorandum and in his opening brief. Petitioner filed no pretrial memorandum, but, in his brief, he does describe it as an audit issue. We treat filing status as an issue tried by consent of the parties. See Rule 41(b).

Petitioner's assignments of error to respondent's determinations are less than clear, but we will assume that he assigned error to all of respondent's adjustments and to his determination of the penalty. He also claimed entitlement to an unreported 2007 net operating loss.

On brief, respondent concedes that the adjustment for passthrough income from Wagner Corp. should be no greater than $241,910. He also concedes that petitioner is entitled to additional itemized deductions of $65,710. At trial, petitioner conceded the adjustments that respondent made with respect to the Schedules C: The information reported on the Schedules C was for Wagner Corp. activity and would already be included in respondent's adjustment on account of the unreported Wagner Corp. passthrough income.

**[\*4]**    The issues left for decision, all with respect to 2007, are whether petitioner:

(1) had passthrough income of $241,910 from Wagner Corp.; (2) had rental

income of $8,340; (3) is entitled to the disallowed deduction for two personal

exemptions; (4) is entitled to head of household filing status; (5) is entitled to the

additional child tax credit; (6) is entitled to the earned income credit; (7) is entitled

to a net operating loss deduction; and (8) is liable for the accuracy-related penalty.

All other adjustments made by respondent are computational and require no

discussion by us.

Petitioner bears the burden of proof.  See Rule 142(a).[2]

---

[2]Sec. 7491(a)(1) provides that, if a taxpayer offers credible evidence with respect to an issue, the burden of proof is on the Commissioner.  See also Rule 142(a)(2).  Sec. 7491(a)(1) applies only if, among other things, the taxpayer complies with the relevant substantiation requirements in the Internal Revenue Code, maintains all required records, and cooperates with the Commissioner with respect to witnesses, information, documents, meetings, and interviews.  Sec. 7491(a)(2)(A) and (B).  The taxpayer bears the burden of proving compliance with the conditions of sec. 7491(a)(2)(A) and (B).  E.g., Seaver v. Commissioner, T.C. Memo. 2009-270, 2009 WL 4163553, at \*4.  Although apparently aware of sec. 7491, which he references on brief, petitioner proposes no facts from which we might find that he complied with the conditions of sec. 7491(a)(2)(A) and (B).  Respondent argues on brief that petitioner did not cooperate with him:

>   For example, he failed to provide underlying source documents, credit card statements, invoices of Wagner Corporation [his subchapter S corporation], and a certified copy of the alleged stipulated parenting plan relating to the custody of his daughter even though those documents were requested.  Petitioner also failed to

(continued...)

**[*5]**                    FINDINGS OF FACT

Preliminary Statement

Before making our findings of fact, we pause to address petitioner's failure to comply with both Rule 151, addressing briefs, and the instructions that, at the conclusion of the trial in this case, we gave to him concerning the filing and content of briefs. At the conclusion of trial, we ordered the parties to file briefs, setting a schedule for opening and answering briefs. Briefs are particularly necessary in this case because the trial transcript is 487 pages and the exhibits run almost 1,500 pages. We directed petitioner to Rule 151, "Briefs", and to Rule 151(e), "Form and Content", in particular. Rule 151(e)(3) requires that an opening brief contain proposed findings of fact supported by references to the pages of the transcript or the exhibits or other sources relied on in support of the proposed findings. The Rule directs that proposed findings precede both the points on which the party relies and the party's argument. Rule 151(e). We explained to

---

[2](...continued)
work with respondent in preparing this case for trial and instead forced respondent's counsel to file a motion under Tax Court Rule 91(f) regarding the then proposed Stipulation of Facts and exhibits.

Petitioner has failed to carry his burden of proving compliance with the conditions of sec. 7491(a)(2)(A) and (B). We therefore conclude that sec. 7491(a)(1) does not apply in this case.

[*6] petitioner how he was to make proposed findings of fact. At trial, respondent presented evidence reconstructing petitioner's 2007 income by way of a bank deposits analysis. We explained to petitioner that if, for example, he disagreed with respondent's having treated a particular deposit as an item of gross receipts, and there was some testimony on point to contradict that treatment, then, on brief, he should direct the Court to that testimony. We added: "You'll have to get a copy of the transcript * * * and show me why it isn't gross receipts." We emphasized to him that we could not take cognizance of what he had provided to the Internal Revenue Service (IRS) during the course of its examination of his return. With respect to one of his concluding arguments at the trial, that he had no gain on the sale of a backhoe, we said: "You're going to [have to] show where in the record there's a basis for the backhoe of at least as much as you got." With respect to another of his arguments at trial, that it was not reasonable for the Government to claim that his business made $300,000, we said:

> Mr. Wagner, let me try one more time. When I close the record, I won't receive any more documents. I won't receive any more testimony, and your obligation will be to marshal the testimony you gave, the testimony * * * Ms. Anderson [respondent's witness] gave, and those 1,500 * * * pages of paper [the exhibits], and on an item-by-item basis * * * with respect to [for instance] the deposit on January 2nd of $3,300, which they say is taxable, [your obligation is to say on brief] it's not taxable for this reason, "see my testimony on

**[\*7]**  page 212 of the transcript," or "see stipulated Exhibit 12-J, page 1398." That's what you have to do. * * * I'm relying on the briefs.

Petitioner's opening brief falls woefully short in meeting the form and content requirements of Rule 151(e) and our guidance. As his brief, petitioner provided 130 unnumbered pages consisting mostly of exhibits not received into evidence (including copies of Wagner Corp.'s 1999, 2000, 2004, and 2005 tax returns), which we have struck from the record as improper documents in the nature of evidence. Petitioner does not set forth separately proposed findings of fact, but rather has statements of apparent fact scattered throughout his brief. He does not provide references to pages of the transcript or to pages of other exhibits in evidence to support those statements. Respondent objects to virtually all of those statements on the ground that they are not properly supported or for other reasons. Principally because they are not properly supported, we will disregard petitioner's statements of fact except to the extent accepted by respondent. Finally, Rule 151(e)(3) also requires that, in an answering or reply brief, the party set forth any objections, together with the reasons therefor, to any proposed findings of any other party. Petitioner filed no answering brief. For that reason, and because we find unusable almost all of his proposed findings of fact, we must conclude that petitioner has conceded respondent's proposed findings of fact. We

**[*8]** adopt respondent's proposed findings except to the extent that respondent has failed to direct us to any evidence in the record supporting a proposed finding, a finding is clearly inconsistent with evidence in the record, or it is inconsistent with respondent's acceptance of any of petitioner's factual statements. See, e.g., Jonson v. Commissioner, 118 T.C. 106, 108 n.4 (2002), aff'd, 353 F.3d 1181 (10th Cir. 2003).

Stipulation

We have pursuant to Rule 91(f) deemed stipulated certain facts and the authenticity of certain documents. Those facts are so found, and the documents deemed stipulated are accepted as authentic.

Petitioner

Petitioner resided in California when he filed the petition.

Petitioner was trained as an accountant and auditor, and, at the time of trial, he had been doing accounting for 40 years.

In 2007, he was also a licensed electrician and general contractor. He operated a construction business through his wholly owned S corporation, Wagner Corp. He was also an owner of an unincorporated business, Sandoval Electric (Sandoval), which worked with Wagner Corp. Petitioner had signature authority over Sandoval's bank account at Bank of America. Sandoval regularly wrote

[*9] checks to Wagner Corp. which petitioner deposited in the latter's bank account, also at Bank of America. Petitioner also deposited checks drawn to Sandoval into Wagner Corp.'s bank account.

Petitioner is a calendar year taxpayer, and he timely filed the 2007 Form 1040. He claimed head of household filing status and showed two dependents: one, KW, his daughter, and another, ST, not his daughter. He reported income of $14,854 and claimed deductions on Schedule A, Itemized Deductions, of $51,235. He claimed, on account of KW and ST, two personal exemption deductions. He claimed an earned income credit and a child tax credit. He claimed no net operating loss deduction.

Cecilia Francis; Custody Order

Cecilia Francis is petitioner's ex-wife and KW's mother. Petitioner and Ms. Francis had divorced before 2007. Pursuant to a December 23, 2005, State court order (custody order), petitioner and Ms. Francis are to share joint custody of KW, but the order does not say which parent can claim KW as a dependent for what tax year. The custody order specifies the days and times during the year that KW is to reside with each of Ms. Francis and petitioner. During 2007, KW was to reside with Ms. Francis more than with petitioner whether one measures by hours or

**[\*10]** nights spent with each parent.[3]  Moreover, KW did, indeed, reside with Ms. Francis for more than one-half of 2007.  She did not reside with petitioner for more than one-half of 2007.  Ms. Francis claimed KW as a dependent on her 2007 Federal income tax return.  Ms. Francis did not sign a release of claim authorizing petitioner to claim KW as a dependent for 2007.  Petitioner did not attach to the 2007 Form 1040 a release of claim authorizing him to claim KW as a dependent for 2007.

Wagner Corp.

Wagner Corp. is an S corporation within the meaning of section 1361(a)(1).  Wagner Corp. delinquently filed its 2007 Form 1120S, U.S. Income Tax Return for an S Corporation (2007 Form 1120S).  On that return, Wagner Corp. reported the following:

| Item | Amount |
| --- | --- |
| Gross receipts | $167,130 |
| Cost of goods sold | 4,540 |
| Total income | 162,590 |
| Deductions: | |
| Depreciation | 7,095 |
| Advertising | 45,670 |
| Other expenses | 215,455 |
| Ordinary income (loss) | (105,630) |

[3]If the custody order was flexible or unclear, our calculations resolved ambiguities in favor of petitioner, i.e., we assumed KW spent those hours and nights with him.

[*11] Petitioner did not report that loss on his 2007 Form 1040.

Among the expenditures constituting the category "Other Expenses" are the following:

| Expense | Amount |
| --- | --- |
| Automobile and truck | $27,262 |
| Janitorial | 3,025 |
| Outside services/ independent contractors | 115,985 |
| Telephone | 2,128 |
| Supplies | 46,937 |

Respondent's Examination

Respondent examined the 2007 Form 1040. Because petitioner's deductions on the return exceeded the income that he reported on the return, respondent's agent, Sandra Anderson, decided to examine records for petitioner's bank accounts to see whether they presented evidence of unreported income. Pursuant to a summons to Bank of America for bank records associated with petitioner for 2007, she received statements, signature cards, deposit slips, and checks for two bank accounts. One account was in the name of Wagner Corp., and the other was in the name of Sandoval. She used the information she had received to perform a bank deposits analysis for each account (on the assumption that any income items deposited into the accounts were reportable by petitioner). That analysis consisted of her, first, totaling deposits; second, identifying what she considered to be

[*12] nontaxable deposits, such as transfers between accounts and the deposit of loan proceeds; third, subtracting the total of identified nontaxable deposits from the deposit total, the difference being what she considered to be taxable deposits, and; fourth, determining the difference between what she had determined to be taxable deposits and petitioner's reported income. That difference, she believed, represented unreported income. With adjustments to reflect certain concessions by respondent during the trial of this case, Ms. Anderson's analysis shows what respondent considers to be taxable deposits of $304,985 and $28,385 into the Wagner Corp. account and the Sandoval account, respectively. She treated the Sandoval account as, in effect, an account of Wagner Corp., and, together, the sum of deposits into the two accounts is $333,370. That sum, $333,370, exceeds by $166,240 the gross receipts, $167,130, that Wagner Corp. reported on the 2007 Form 1120S. Taking account of the $4,540 cost of goods sold that Wagner Corp. reported on that return, respondent contends that Wagner Corp. underreported its 2007 total income by $161,700.

On the basis of Ms. Anderson's examination, respondent also disallowed for lack of substantiation Wagner Corp.'s deductions for advertising of $23,379 and for other expenses of $157,921. The disallowed other expenses include $1,064 of the claimed telephone expense, $10,197 of the claimed automobile expense,

[*13] $2,420 of the claimed janitorial expense, $28,255 of the claimed supplies expense, and $115,985 of the claimed outside-services expense.

The foregoing adjustments result in respondent's (present) determination that petitioner's flowthrough income from Wagner Corp. for 2007 is $241,910, calculated as follows:

| Item | Amount |
|---|---|
| Gross receipts | $333,370 |
| Cost of goods sold | 4,540 |
| Total income | 328,830 |
| Deductions: | |
| Depreciation | 7,095 |
| Advertising | 22,291 |
| Other expenses | 57,534 |
| Ordinary income (loss) | 241,910 |

Postexamination Letter

After the examination, petitioner submitted to one of the IRS Appeals officers a letter in which he claims that for 2007, Wagner Corp. had a net operating loss carryover of $171,334, resulting from losses for 1998, 1999, 2000, 2003, and 2004. He did not support the claim with returns or other documents. He argued that because the periods of limitations may have expired for those years, respondent must accept and allow the loss carryovers set forth in the letter. The IRS Appeals officer informed petitioner that the letter alone was insufficient proof of any loss carryovers to 2007.

**[*14]** <u>Rental Income</u>

Petitioner received $8,340 in rent during 2007 from an individual, Ruedeemard Odanaka, residing in his principal residence. Petitioner did not report that rental income on the 2007 Form 1040.

OPINION

I.     <u>Flowthrough Income From Wagner Corp.</u>

A.     <u>Introduction</u>

During 2007, petitioner was a licensed electrician and general contractor who carried on a construction business through his wholly owned corporation, Wagner Corp. Because Wagner Corp. was a S corporation for Federal income tax purposes, its items of income, loss, deduction, or credit are taken into account directly by its shareholders (in this case, petitioner). <u>See</u> sec. 1366(a)(1). Petitioner also owned some or all of Sandoval, an unincorporated business which worked with Wagner Corp. During 2007, both Wagner Corp. and Sandoval maintained bank accounts at Bank of America. Using what respondent describes as a bank deposits analysis, one of his agents, Ms. Anderson, identified what she believes to be taxable deposits into those two accounts in 2007 totaling $330,370. At trial, petitioner conceded that he has no quarrel with Ms. Anderson's identification (i.e., amounts and dates) of the individual deposits into those

[*15] accounts during 2007. He quarreled only with some of her classifications of deposits as taxable. Taking into account certain concessions made by respondent, petitioner failed to identify any classification errors in Ms. Anderson's revised bank deposits analysis for either Wagner Corp. or Sandoval. He misunderstood Ms. Anderson's treatment of chargeback items; i.e., how she treated deposited checks that, subsequently, were dishonored. If the dishonored check had not been considered a taxable deposit when made (e.g., an intercompany transfer), she ignored its dishonor. If it had been considered a taxable deposit when made, she made a negative entry to offset its inclusion in taxable deposits when it was dishonored. For example, petitioner questioned the classification of a $2,006 chargeback shown for October 9, 2007, which respondent's counsel at trial showed him offset a prior inclusion as a taxable deposit of the same amount. Petitioner responded, "Okay. Good."

Petitioner contended at trial that some deposits that Ms. Anderson had classified as taxable represented the proceeds of credit card loans and, for that reason, she should have classified them as nontaxable. The transactions in question were evidenced by copies of (1) a deposit slip showing a deposit of cash and (2) a bank form, labeled "Cash In-Debit", matching in amount the deposit slip. Ms. Anderson testified that she understood the Cash In-Debit form to be the bank's

**[*16]** receipt for the cash deposited. Petitioner argued that it evidenced a credit card loan. There being no additional evidence on the point, the Court invited petitioner to make additional investigation, and we informed him of the rule allowing a court to take judicial notice of adjudicative facts (e.g., bank practices). See Fed. R. Evid. 201. Petitioner has not asked us to notice any facts that would support his claim. Petitioner has failed to prove that the deposits in issue are other than taxable.

Petitioner also appeared to challenge that the deposits to the Sandoval account were his income. Petitioner was an owner of Sandoval, with signature authority over its bank account. He regularly deposited checks drawn to the order of Sandoval into the Wagner Corp. bank account. Respondent treated checks drawn on Sandoval's account and deposited into Wagner Corp.'s account as nontaxable, intercompany transfers. We see no error in that procedure.

Petitioner presented his own records as contradicting Ms. Anderson's analysis. Petitioner's records contain errors and do not reconcile to Bank of America's records; we give them no weight.

B. Analysis

Gross income includes "income derived from business". Sec. 61(a)(2). Wagner Corp. was in the construction business, and Sandoval worked with

**[*17]** Wagner Corp. Petitioner was the sole owner of Wagner Corp., and he owned some or all of Sandoval. In the case of unreported income, the Commissioner has the initial burden to produce some evidence of an income-producing activity by the taxpayer. E.g., Palmer v. United States, 116 F.3d 1309, 1313 (9th Cir. 1997). Respondent has met that burden by showing petitioner's ownership of all of Wagner Corp. and of at least a part of Sandoval. In the absence of adequate books and records, the Commissioner may use an indirect method to determine a taxpayer's income. See DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), aff'd, 959 F.2d 16 (2d Cir. 1992). The bank deposits method has long been recognized as a reasonable method to reconstruct income where the taxpayer's records are inadequate or incomplete. E.g., Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), aff'd, 566 F.2d 2 (6th Cir. 1977). Petitioner has failed to show any error in Ms. Anderson's revised computation that petitioner failed for 2007 to report as flowthrough amounts from Wagner Corp. (including Sandoval) taxable receipts of $333,370 deposited into bank accounts at Bank of America. Petitioner also failed to show error in respondent's disallowance of the following amounts of Wagner Corp.'s claimed 2007 deductions: $23,379 for advertising, $1,064 for telephone expenses, $10,197 for automobile expenses, $2,420 for janitorial expenses, $28,255 for supplies, and $115,985 for outside-

[*18] services expenses.  The foregoing adjustments result in respondent's determination that petitioner's flowthrough income from Wagner Corp. (including Sandoval) for 2007 is $241,910.  We agree, and we find accordingly.

## II.    Rental Income

Rents are an item of gross income.  Sec. 61(a)(5).  Petitioner received $8,340 in rent during 2007 from an individual residing in his principal residence, which he did not report on the 2007 Form 1040.  We sustain respondent's adjustment, increasing petitioner's gross income by $8,340 for the unreported rental income.

## III.   Personal Exemptions

### A.    Introduction

Section 151 allows deductions for personal exemptions.  An unmarried individual is entitled to a personal exemption for himself and an additional exemption for each dependent.  Sec. 151(c).  The term "dependent" is defined in section 152(a) to include either a "qualifying child" or a "qualifying relative".  Those terms are, in turn, defined in subsections (c) and (d), respectively, of section 152.  Petitioner claimed two dependency exemption deductions on the 2007 Form 1040:  one for his daughter, KW, and one for ST.

**[*19]** B.   <u>KW</u>

The general rule is that a qualifying child must have lived with the taxpayer for more than one-half of the taxable year.  <u>See</u> sec. 152(c)(1)(B).  Also, a dependency exemption deduction for a qualifying child may be claimed by only one taxpayer.  <u>See</u> sec. 152(c)(4).  In the case of divorced parents, the custodial parent is entitled to claim the dependency exemption deduction for the qualifying child unless he or she signs a written declaration waiving that right.  <u>See</u> sec. 152(e)(1) and (2).  "Custody" is determined by the terms of the most recent decree of divorce or separate maintenance, or subsequent custody decree, or, if none, a written separation agreement.  Sec. 1.152-4(b), Income Tax Regs.  If none of those documents establishes custody or if there is so-called split custody, then the custodial parent will be the one who has physical custody of the child for the greater portion of the calendar year.  <u>See</u> <u>id.</u>

Petitioner's principal argument with regard to KW is that his divorce decree ordered that he would be able to claim the dependency exemption deduction for odd years (which include 2007).  In support of his contention, petitioner offered a signed declaration by Ms. Francis, his former spouse, written in 2003.  The declaration attaches both an unsigned proposed final judgment of dissolution stamped "DRAFT" and an unsigned stipulated shared parenting plan.  The draft of

**[*20]** the final judgment of dissolution gives petitioner the right to claim the dependency exemption deduction for odd years, and he argues that the document should be binding for the taxable year 2007. Respondent objected to the admissibility of those documents on the basis of the best evidence rule. See Fed. R. Evid. 1002. We agreed insofar as petitioner was offering the documents to prove their contents, and we held the record open for more than two months after trial in order to give petitioner a further opportunity to provide any certified or conformed court document relating to his divorce.[4] He has not provided any such documents.

In making his dependency exemption determination, respondent relied primarily on the custody order. The custody order provides for a split-custody arrangement detailing the times and dates in which each parent will have physical custody of KW. It does not state which parent can claim KW as a dependent for any tax year. Pursuant to the terms of custody order, Ms. Francis was KW's custodial parent for 2007 since KW was to be with her for both more hours and

---

[4]Petitioner argues on brief, that because Ms. Francis signed the declaration to which the draft dissolution order was attached, it should be viewed as a valid and enforceable document. The proposed order needed to be signed by the judge conducting the divorce proceeding, not by Ms. Francis alone. We also notice that, in her declaration, Ms. Francis states that the attachment is a proposed judgment which petitioner was objecting to as of 2003. That statement at least partially suggests that the proposed judgment was not the final one.

**[*21]** more nights than she was to be with petitioner. See <u>Bjelland v. Commissioner</u>, T.C. Memo. 2009-297, 2009 WL 4980288, at *3 (acknowledging that the Court has considered both the number of nights and the number of hours a child spends with each parent to determine custody), <u>aff'd sub nom.</u> <u>Knochelmann v. Commissioner</u>, 455 Fed. Appx. 536 (6th Cir. 2011). Indeed, we have found that, in fact, KW did reside with Ms. Francis for more than one-half of 2007.

Petitioner does not address the custody order or whether it, in fact, orders that KW be in the physical custody of her mother for the greater portion of 2007. He also does not present any evidence that details the actual amount of time or number of days KW was in his custody. His only other argument is that because KW attended school in the district of his residence, he must have had physical custody of her for more than 50% of the time. There is no evidence to support that contention.

In light of the custody agreement and our finding that KW did, in fact, reside with Ms. Francis for more than one-half of 2007, we find that Ms. Francis was KW's custodial parent during 2007. Moreover, Ms. Francis did not waive her right to claim KW as a dependent and, in fact, did claim her as a dependent on her 2007 income tax return. We find that KW was not a qualifying child with respect

**[*22]** to petitioner and that he may not claim a dependency exemption deduction for her for 2007.

C.    ST

Petitioner also claimed ST as a dependent on the 2007 Form 1040.  On brief, petitioner states:  "She resided at my house * * * for all 2007.  I paid all her living expenses including tuition and books to attend El Camino College.  Her social security number is listed on my return."  Except for the last claim, petitioner did not provide any evidence to support those claims.  Moreover, even if the above were true, it is insufficient to claim either a qualifying child or a qualifying relative.[5]  He has, thus, failed to prove he is entitled to a dependency exemption deduction for ST.

IV.    Head of Household Filing Status

Section 1(b) applies an advantageous tax rate to the taxable income of an individual who qualifies as a "head of household".  Compare sec. 1(b) with sec. 1(c) (rate generally applicable to taxable income of unmarried individuals).  As

---

[5]For example, if petitioner claimed that ST was his child, she would also need to be, among other things, under 24 years old.  See sec. 152(c)(3).  Alternatively, if she was a relative who bore the necessary relationship described under sec. 152(d)(2), her gross income would need to be below $3,400 for 2007.  See secs. 152(d)(1)(B), 151(d); Rev. Proc. 2006-53, sec. 3.18, 2006-2 C.B. 996, 1001.  As we have no information regarding ST, petitioner has not met his burden of proving that the requirements of sec. 152 have been met.

[*23] pertinent to this case, the term "head of household" is defined to mean an individual unmarried at the end of the taxable year who, among other things, maintains a home as the principal place of abode for a qualified child or other dependent. See sec. 2(b)(1).

Because we have already found that petitioner has failed to carry his burden of claiming the existence of a qualifying child or relative, petitioner cannot meet the "head of household" filing requirements.

V.    Additional Child Tax Credit

Section 24 provides a credit with respect to each qualifying child of the taxpayer. A "qualifying child" for purposes of section 24 uses the definition found in section 152(c), only with a different age requirement. See sec. 24(c)(1). As previously discussed, petitioner has not shown he had any qualifying children in 2007 and, thus, is not entitled to any credit under section 24, including what is often called the "additional child tax credit" described in section 24(d).

VI.    Earned Income Credit

Section 32 provides a refundable earned income credit to certain low-income individuals. The amount of the credit depends on the taxpayer's adjusted gross income, earned income, filing status, and the number of qualifying children, if any, that the taxpayer may claim. See sec. 32. We have already held that KW

[*24] and ST are not petitioner's qualifying children. Therefore, petitioner may not claim them as such for purposes of the earned income credit.

Nonetheless, a single taxpayer who does not have qualifying children may still be able to claim a smaller earned income credit. To be eligible for this reduced credit, the taxpayer may not have adjusted gross income exceeding a statutory ceiling. See sec. 32(b)(2), (j). In 2007, the ceiling was $12,590. See Rev. Proc. 2006-53, sec. 3.07, 2006-2 C.B. 996, 1000. Because of the adjustments we sustain for petitioner's unreported 2007 income, his 2007 income exceeds that ceiling. Therefore, petitioner is ineligible for the earned income credit.

VII. Net Operating Loss

Section 172(a) allows a net operating loss deduction; i.e., a deduction for the aggregate of the net operating loss carryovers and carrybacks to a taxable year. In general, net operating losses are carried back two years and forward 20 years. See sec. 172(b)(1) and (2).

Petitioner did not claim any net operating loss deduction on the 2007 Form 1040. In the petition, he did claim that he had a loss carryforward from his S corporation (we assume Wagner Corp.). The parties have stipulated a letter from petitioner to one of the IRS Appeals officers in which he claims that for 2007 Wagner Corp. had a net operating loss carryover of $171,334, resulting from

[*25] losses for 1998, 1999, 2000, 2003, and 2004. No returns or other documentation are attached to the letter to support petitioner's claim of losses for those years. The letter expresses petitioner's mistaken view that, because the periods of limitations may have expired for those years, respondent must accept and allow the loss carryovers set forth in the letter. The IRS Appeals officer had informed petitioner that the letter alone was insufficient proof of any loss carryforwards to 2007. At trial, respondent objected to petitioner's raising the issue of loss carryovers on the grounds (mistakenly) that petitioner had not raised the issue in the petition. Petitioner did not contradict respondent, claiming only that he had sent the stipulated letter to the IRS Appeals officer. We sustained respondent's objection to petitioner's testifying about carryover losses, but, later in the proceeding, recognizing that the parties had stipulated petitioner's letter to the IRS Appeals officer, we stated that the parties could argue the consequence of the letter on brief. On brief, respondent acknowledges that petitioner raised the issue of a loss carryover in the petition.

Notwithstanding that petitioner should not have been precluded from testifying about carryforward losses, respondent argues that we should allow no net operating loss deduction for 2007. Our pretrial order in this case, served on September 3, 2013, required the parties to stipulate all documents to which there

[*26] was no disagreement and to exchange two weeks before the trial all other documents or materials that the party expected to offer into evidence at trial and that are not included in the stipulation. The stipulation of facts entered into by the parties does not contain Wagner Corp.'s returns for the claimed loss years, nor does it appear that petitioner exchanged those returns with respondent on respondent's failure to stipulate them. Petitioner did attach as exhibits to his brief, copies of Wagner Corp.'s returns for 1999, 2000, 2004, and 2005, but we struck those documents as prohibited exhibits in the nature of evidence. Indeed, even if the tax returns were included in the record, they alone would not be sufficient to establish entitlement to the deduction. See Owens v. Commissioner, T.C. Memo. 2001-143, 2001 WL 686945, at *8 ("Although each of the returns for 1990, 1991, and 1992 shows a loss attributable to petitioners' Schedule C business, petitioners failed to introduce any evidence establishing the loss claimed in each of those returns. The returns for 1990 through 1992 constitute nothing more than the position of petitioners that they had the respective losses claimed in those returns."); see also Wilkinson v. Commissioner, 71 T.C. 633, 639 (1979) (holding that a tax return does not establish that a taxpayer had income and losses in the amounts reported on the return). There is also no evidence that any losses would not have been absorbed by carrybacks.

[*27] Had petitioner been allowed to testify to the matter, it would not change the outcome. As petitioner did not provide any documentary evidence supporting prior losses, he, at most, could have provided self-serving testimony that such losses did occur. That testimony would not have been sufficient to allow the deduction. See Gould v. Commissioner, 139 T.C. 418, 444 (2012) (holding that prior year returns and self-serving testimony, absent corroborating evidence, do not substantiate a taxpayer's entitlement to loss carryovers), aff'd, 552 Fed. Appx. 250 (4th Cir. 2014). Therefore, any error in excluding petitioner's testimony was harmless. Cf. Nida v. Plant Prot. Ass'n Nat'l, 7 F.3d 522, 527 (6th Cir. 1993) (finding the District Court's error in excluding evidence harmless because it would not have made a difference in the outcome of the trial).

VIII. Penalty

Section 6662(a) and (b)(1) and (2) provides for an accuracy-related penalty of 20% of the portion of any underpayment attributable to, among other things, negligence or disregard of rules or regulations (without distinction, negligence) or any substantial understatement of income tax. The term "negligence" includes "any failure to make a reasonable attempt to comply with the provisions" of the Internal Revenue Code or a failure to exercise "ordinary and reasonable care in the preparation of a tax return." See sec. 1.6662-3(b)(1), Income Tax Regs. The term

**[\*28]** "disregard" includes "any careless, reckless, or intentional disregard." Sec. 6662(c).

A substantial understatement of income tax exists for an individual if the amount of the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

Section 6664(c)(1) provides that the penalty shall not be imposed with respect to any portion of an underpayment if the taxpayer shows that there was reasonable cause for, and that he acted in good faith with respect to, that portion.

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances. * * * Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of * * * law that is reasonable in light of all the facts and circumstances, including the experience, knowledge, and education of the taxpayer. * * *

Sec. 1.6664-4(b)(1), Income Tax Regs.

The Commissioner generally bears the burden of production with respect to the penalty. See sec. 7491(c). The burden imposed by section 7491(c) is "only to come forward with evidence regarding the appropriateness of applying a particular addition to tax or penalty to the taxpayer". Good v. Commissioner, T.C. Memo. 2008-245, 2008 WL 4756483, at \*9 (quoting Weir v. Commissioner, T.C. Memo. 2001-184). However, the Commissioner's obligation under section 7491(c) is

**[\*29]** conditioned on the taxpayer's assigning error to the penalty or addition to tax. Swain v. Commissioner, 118 T.C. 358, 363 (2002). Where the taxpayer fails to assign error to a penalty or an addition to tax, the taxpayer is deemed to have conceded the issue under Rule 34(b)(4). Id. Petitioner bears the burden of proving that he is entitled to relief under section 6664(c)(1). See Higbee v. Commissioner, 116 T.C. 438, 446 (2001).

Although petitioner did not explicitly assign error to the penalty determination in his petition, we need not decide whether he has conceded the issue because respondent has satisfied his burden of production with respect to petitioner's negligence. Petitioner prepared both of the returns. He admitted that he failed to report a portion of his taxable income on his return. He also admitted reporting items on the Schedules C that should have been included as part of Wagner Corp.'s return. Further, petitioner did not maintain adequate records for purposes of documenting his income or for purposes of substantiating his business expenses. He improperly claimed a dependency exemption deduction for ST and did not introduce any documentation in support of his position that she was a dependent.

Respondent has also established that petitioner's understatement of income tax for 2007 is substantial. Petitioner reported no tax liability for 2007.

[*30] Respondent originally determined a deficiency of $77,085, and even taking into account the many adjustments, petitioner's understatement will still exceed the section 6662(d)(1)(A) threshold for a substantial understatement of tax.

Therefore, respondent has satisfied his burden of production with respect to the accuracy-related penalty. To avoid the penalty, petitioner must come forward with evidence that he acted with reasonable cause and in good faith. Petitioner has not come forward with any such evidence. Therefore, we sustain respondent's imposition of the section 6662(a) penalty.

IX.    Conclusion

Conceded and merely computational issues aside, we sustain the following adjustments to petitioner's 2007 Federal income tax liability: (1) He had income of $241,910 from Wagner Corp.; (2) he had rental income of $8,340; (3) he is entitled to a deduction for only one personal exemption; (4) he is not entitled to head of household filing status; (5) he is entitled to no child tax credit; (6) he is entitled to no earned income credit; (7) he is entitled to no net operating loss deduction; and (8) he is liable for the accuracy-related penalty.

Decision will be entered under

Rule 155.